IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PEDRO J. SANCHEZ,                    :
                                     :
            Plaintiff,               :
                                     :
      v.                             : Civil Action No. 04-286-JJF
                                     :
JO ANNE B. BARNHART,                 :
Commissioner of Social               :
Security Administration,             :
                                     :
            Defendant.               :
                                     :
                                     :

_____

Steven L. Butler, Esquire of the LAW OFFICE OF GARY LINARDUCCI,
New Castle, Delaware.
Attorney for Plaintiff.

Colm F. Connolly, Esquire, United States Attorney, of the OFFICE
OF THE UNITED STATES ATTORNEY, Wilmington, Delaware. and
Of Counsel:  David F. Chermol, Esquire, Special Assistant United
States Attorney for the District of Delaware, and Donna L.
Calvert, Esquire of the OFFICE OF THE GENERAL COUNSEL OF THE
SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.
Attorneys for Defendant.

_____

**MEMORANDUM OPINION**

September 16, 2005
Wilmington, Delaware

*Joseph J. Farnan*

**Farnan, District Judge.**

Presently before the Court is an appeal pursuant to 42
U.S.C. § 405(g) filed by Plaintiff, Pedro J. Sanchez, seeking
review of the final decision of the Commissioner of the Social
Security Administration (the "Commissioner") denying Plaintiff's
application for disability insurance benefits ("DIB") under
Titles II of the Social Security Act (the "Act"), 42 U.S.C. §§
401-433.  Plaintiff has filed a Motion For Summary Judgment (D.I.
12) requesting the Court to enter judgment in Plaintiff's favor
and reverse or remand the decision of the Commissioner.  In
response to Plaintiff's Motion, Defendant has filed a Cross-
Motion For Summary Judgment (D.I. 16) requesting the Court to
affirm the Commissioner's decision.  For the reasons set forth
below, Defendant's Cross-Motion For Summary Judgment will be
granted, and Plaintiff's Motion For Summary Judgment will be
denied.  The decision of the Commissioner dated April 22, 2003,
will be affirmed.

**BACKGROUND**

**I.   Procedural Background**

Plaintiff filed an application for DIB on June 27, 1997,
alleging disability since June 4, 1997, primarily due to asthma
and back pain.  Plaintiff's application was denied initially and
upon reconsideration.  (Tr. 49-52, 55-58).  Plaintiff filed a
timely request for an administrative hearing, and the A.L.J. held

1

a hearing on August 27, 1998.  (Tr. 24-51).  On January 13, 1999,
the A.L.J. issued a decision denying Plaintiff's claim for DIB.
The Commissioner requested a voluntary remand of this matter,
because a vocational expert did not testify at the hearing.  (Tr.
246-249).  The Honorable Gregory M. Sleet granted the motion to
remand, and a second hearing was held before the A.L.J. on April
4, 2003.

During the second hearing, Plaintiff was represented by
counsel and a vocational expert testified.  Following the
hearing, the A.L.J. issued a decision dated April 22, 2003,
denying Plaintiff's claim.  (Tr. 213-219).  Plaintiff filed an
appeal, and the Appeal's Council denied review.  (Tr. 198-206).
Accordingly, the A.L.J.'s April 22, 2003 decision became the
final decision of the Commissioner.  Sims v. Apfel, 530 U.S. 103,
107 (2000).

After completing the process of administrative review,
Plaintiff filed the instant civil action pursuant to 42 U.S.C. §
405(g) seeking review of the A.L.J.'s decision denying his claim
for DIB.  In response to the Complaint, Defendant filed an Answer
(D.I. 7) and the Transcript (D.I. 8) of the proceedings at the
administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment
and Opening Brief (D.I. 12, 13) in support of the Motion.  In
response, Defendant filed a Cross-Motion For Summary Judgment and

2

a combined Opening and Answering Brief (D.I. 16, 17) requesting the Court to affirm the A.L.J.'s decision.  Plaintiff waived his right to file a Reply Brief (D.I. 18), and therefore, this matter is fully briefed and ripe for the Court's review.

## II.  Factual Background

### A.   Plaintiff's Medical History, Condition and Treatment

At the time of the A.L.J.'s second hearing in this case, Plaintiff was sixty-one years old.  (Tr. 227).  Plaintiff attended school in Puerto Rico and attained a ninth grade education.  (Tr. 228).  Although Plaintiff is able to speak English, he contends that he has a limited ability to read and write in English.  (Tr. 26-27).  However, Plaintiff testified that he can understand what he is buying in the grocery store and that he has some ability to read the newspaper.  Plaintiff's past relevant work included employment as a custodian for the University of Delaware.  (Tr. 214).  Plaintiff receives a disability retirement pension from the University of Delaware.  (Tr. 28, 39).  Plaintiff's last date insured for DIB was December 31, 2002.

Plaintiff has a history of asthma with his asthma being linked to his exposure to polish and other cleaning chemicals used during his employment as a custodian.  Plaintiff has been treated by Jeffrey Kerner, D.O., his primary care doctor, Anthony Vasile, D.O., a board certified pulmonary specialist and Mark

3

Haegele, D.O.  (Tr. 215-216).  Plaintiff uses an asthma inhaler
two to three times per day and acknowledges that the inhaler
relieves his symptoms.  Plaintiff treated with Dr. Vasile for
slightly over one year from September 1993 to October 1994.
Medical records from 1994 indicate that Plaintiff had asthma, but
that his asthma was under control with medication.  (Tr. 134-
142).  After an absence of almost three years, Plaintiff returned
to Dr. Vasile in May 1997.  Dr. Vasile's notes indicate that
Plaintiff had not been hospitalized and did not seek treatment
for any asthma symptoms for nearly three years, but that
Plaintiff returned to Dr. Vasile to be evaluated in connection
with his pursuit of retirement disability benefits.  Dr. Vasile
acknowledged that Plaintiff did suffer respiratory difficulties
which were exacerbated by his employment as a custodian.  Dr.
Vasile also noted that Plaintiff missed a fair amount of time at
work, but wrote that he would need to have that missed time
quantified.  Dr. Vasile also noted that he was "not clear if he
is in fact disabled since he is able to work and has not been in
the emergency room or hospitalized for asthma."  (Tr. 132).
Diagnostic testing of Plaintiff's breathing at this time yielded
normal results.  (Tr. 143-144).  Nevertheless, Dr. Vasile
completed a disability form for Plaintiff to receive disability
retirement benefits.  (Tr. 161-162).

        Plaintiff also treated with his family doctor, Dr. Kerner,

in May 1997 in connection with his pursuit of disability
retirement benefits.  Dr. Kerner completed a two page Attending
Physician Statement indicating that Plaintiff could no longer
perform the requirements of his job due to ongoing episodes of
shortness of breath and exposure to polishes, waxes and other
chemicals.  Dr. Kerner noted that Plaintiff had to avoid exposure
to chemicals and wrote that Plaintiff could only work 2-3 hours
in a sedentary capacity.  Dr. Kerner also checked the box that
Plaintiff was incapable of minimal sedentary activity; however,
Dr. Kerner opined that Plaintiff could walk 1 hour in an 8 hour
day, sit for 8 hours in an 8 hour day, stand for 2 hours in an 8
hour day and bend for 1 hour in an 8 hour day.  Dr. Kerner also
noted that Plaintiff could not work in his regular occupation,
but checked that he was able to work in "some occupations."  (Tr.
153).  Although Plaintiff last treated with Dr. Kerner in July
1998, Dr. Kerner completed a Residual Functional Capacity
Evaluation for Plaintiff in January 2003.  In this form, Dr.
Kerner attributed Plaintiff's inability to work to ongoing
episodes of back pain.  In April 2003, Dr. Kerner also provided a
letter addressed "To whom it may concern" stating that Plaintiff
stopped working due to exposure to chemicals which caused him
wheezing and shortness of breath.  Dr. Kerner stated that
Plaintiff has continued sensitivity to environmental chemicals
and that it was his opinion that "he has a degree of permanent

damage to his pulmonary tissue."   (Tr. 313).

Plaintiff underwent a consultative physical examination in October 1997.  The consultative examiner noted mild wheezing on expiration and no sign of rales or rhonchi (Tr. 165).  No back pain was noted and no diagnosis was made with respect to back pain.

In June 2001, Plaintiff underwent a diagnostic study of his chest.  The results of this study were normal.  (Tr. 291).  There are no medical records that Plaintiff was hospitalized or received emergency treatment for asthma during the relevant time. Plaintiff also did not treat with any specialists for back pain.

Two residual functional capacity assessments were completed by state agency physicians for Plaintiff in 1997 and 1998.  Both state agency physicians opined that Plaintiff could perform a range of medium work activity that did not involve exposure to breathing irritants.  (Tr. 171-178, 179-186).  The doctor completing the 1997 assessment stated that Plaintiff suffers from "intermittent asthma which is largely brought on by his job. However, his pulmonary function studies are essentially normal." (Tr. 178).

B.   The A.L.J.'s Decision

On April 4, 2003, the A.L.J. conducted a hearing on Plaintiff's application for DIB.  At the hearing, Plaintiff was represented by counsel.  In addition to Plaintiff, a vocational

expert testified.  In questioning the vocational expert, the
A.L.J. assumed that Plaintiff could not go back to his past
relevant work as a custodian.  The A.L.J. then asked the
vocational expert to consider a hypothetical individual with the
same vocational profile as Plaintiff and who could perform work
at the medium exertional level, but would have to avoid
concentrated exposures to dust, fumes, smoke, chemicals and the
like.  The vocational expert responded that such a hypothetical
individual could perform work as a packer and a stock clerk.

In his decision dated April 22, 2003, the A.L.J. found that
Plaintiff suffered from asthma which is a "severe" impairment,
but that the condition did not meet or equal one of the listed
impairments in 20 C.F.R. pt. 404, subpt. P. app. 1 (2003).  (Tr.
22).  The A.L.J. further found that Plaintiff retained the
residual functional capacity for work medium work, but that he
must avoid concentrated exposure to dust, smoke, fumes and the
like.  Using the Medical Vocation Rules as a framework, the
A.L.J. concluded that a significant number of jobs existed in the
national economy that Plaintiff could perform, including the job
of packer, with 7,000 jobs regionally and more than 100,000 jobs
nationally, and stock clerk, with 9,500 jobs regionally and more
than 100,000 jobs nationally.  Thus, the A.L.J. concluded that
Plaintiff was not disabled within the meaning of the Act.

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. <u>Monsour Medical Ctr. v. Heckler</u>, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a <u>de novo</u> review of the Commissioner's decision and may not re-weigh the evidence of record. <u>Id.</u> In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. <u>Id.</u> at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed that "[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing

evidence.  Nor is evidence substantial if it is overwhelmed by
other evidence . . . or if it really constitutes not evidence but
mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir.
1983).  Thus, the substantial evidence standard embraces a
qualitative review of the evidence, and not merely a quantitative
approach.  Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir.
1981).

## DISCUSSION

### I.  Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is
defined as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental
impairment, which can be expected to result in death, or which
has lasted or can be expected to last, for a continuous period of
not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A).  To be found
disabled, an individual must have a "severe impairment" which
precludes the individual from performing previous work or any
other "substantial gainful activity which exists in the national
economy."  20 C.F.R. §§ 404.1505.  In order to qualify for
disability insurance benefits, the claimant must establish that
he or she was disabled prior to the date he or she was last
insured.  20 C.F.R. § 404.131, Matullo v. Bowen, 926 F.2d 240,
244 (3d Cir. 1990).  The claimant bears the initial burden of
proving disability.  20 C.F.R. §§ 404.1512(a); Podeworthy v.

Harris, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. §§ 404.1520.  In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity.  In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment.  If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits.  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three.  In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial gainful work.  Id. at 428.  If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five.  Id.

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work.  Id.  The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work.  Id.

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy.  At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied.  Id.  Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity.  Id.  In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments.  At this step, the A.L.J. often seeks the assistance of a vocational expert.  Id. at 428.

## II.   Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By his Motion, Plaintiff contends that the A.L.J.'s determination that Plaintiff was capable of performing medium work that existed in significant numbers in the national economy was not supported by substantial evidence.  Specifically, Plaintiff contends that the A.L.J. erred in accepting the opinions of non-examining state agency physicians and rejecting the opinions of Plaintiff's treating physicians, Drs. Kerner and Vasile.

An A.L.J. may reject the opinion of a treating physician if the opinion is not supported by medically acceptable clinical and

11

laboratory diagnostic techniques and is inconsistent with other
substantial evidence in the record. Fargnoli v. Massanari, 247
F.3d 34, 42 (3d Cir. 2001). If the A.L.J. rejects the opinion of
a treating physician, he or she must adequately explain the
reasons for doing so on the record. Mason v. Shalala, 994 F.2d
1058, 1067 (3d Cir. 1993). If a treating physician's opinion is
rejected, the A.L.J. must consider such factors as the length of
the treatment relationship, the nature and extent of the
treatment relationship, the supportability of the opinion, the
consistency of the opinion with the record evidence, any
specialization of the opining physician and other factors the
plaintiff raises, in determining how to weigh the physician's
opinion. 20 C.F.R. § 404.1527(d)(2)-(6).

In this case, the A.L.J. considered the opinions of Drs.
Kerner and Vasile, but gave them little probative weight. In so
doing, the A.L.J. observed that the opinions of these physicians
were unsupported by the medical evidence of record.
Specifically, the A.L.J. noted that Plaintiff's pulmonary
functions studies were normal, and that Plaintiff had not had any
further studies done since 1997. The A.L.J. also noted that no
objective medical evidence supported Dr. Kerner's opinion of
disability due to ongoing back pain, because the record contained
no diagnosis regarding back pain, no diagnostic tests were
conducted related to back pain, and no specific medications were

prescribed for back pain.  Indeed, Dr. Kerner cited no objective
tests to support his assessments.  (Tr. 304).  The A.L.J. also
observed that Dr. Kerner's opinions were internally inconsistent.
For example, in his 1998 Attending Physician statement, Dr.
Kerner opined that Plaintiff could only perform 2-3 hours of
sedentary work, but that Plaintiff could sit for 8 hours in an 8
hour day and Plaintiff could perform "some occupations."  (Tr.
153).  In the Residual Functional Capacity Evaluation completed
by Dr. Kerner in January 2003, Dr. Kerner wrote that Plaintiff
could sit 3 hours in an 8 hour day with breaks to sit and stand,
but then wrote that Plaintiff could work with a sit/stand option
6-8 hours per day.  (Tr. 303).  With respect to Dr. Vasile, the
A.L.J. specifically noted that when Dr. Vasile evaluated
Plaintiff for disability retirement benefits, he had not treated
Plaintiff for a period of three years.[1]  Because the opinions of
Plaintiff's treating physicians were contradicted by the medical
evidence of record and the A.L.J. adequately explained his
reasons for rejecting those opinions, the Court concludes that
the A.L.J.'s decision was not erroneous.

---

[1]    With respect to Dr. Vasile, the Court also notes that
Dr. Vasile indicate that Plaintiff's asthma was under control
during the one-year period that Plaintiff treated with him.  (Tr.
134-142).  Three years later when Dr. Vasile offered his opinion
for the purposes of helping Plaintiff obtain retirement benefits,
Dr. Vasile expressed that he was uncertain if Plaintiff was
disabled, because "his is able to work and has not been in the
emergency room or hospitalized for asthma."  (Tr. 132).

The Court further concludes that the decision of the A.L.J.
that Plaintiff was not disabled is supported by substantial
evidence.   There is no medical evidence of any hospitalizations
or emergency room visits by Plaintiff for asthma or back pain.
Two state agency physicians rendered opinions that Plaintiff
could perform work in the medium exertional range.   These
opinions were consistent with the medical evidence in the record,
including treatment notes that Plaintiff's asthma was under
control with an inhaler and diagnostic studies which showed no
abnormalities.   Thus, the A.L.J. was entitled to credit the
opinions of the state agency physicians in assessing Plaintiff's
residual functional capacity.[2]   See Jones v. Sullivan, 954 F.2d
125, 128-129 (3d Cir.1991) (recognizing that a non-examining
physician can provide substantial evidence to support the
A.L.J.'s decision); Rivera v. Barnhart, 239 F. Supp. 2d 413, 420
(D. Del. 2002) (recognizing that A.L.J. could rely on state
agency physician opinions where they were consistent with other
evidence in the record).   The A.L.J. then conferred with the
vocational expert who provided unrebutted testimony that a
significant number of jobs were available in the national and
regional economies which Plaintiff could perform.   Accordingly,

_____

[2]   Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995)
(recognizing that opinions of non-examining physicians can
override the opinion of a treating source if those opinions are
supported by evidence in the record)

14

the Court concludes that the A.L.J. did not err in concluding that Plaintiff was not disabled within the meaning of the Act.

## CONCLUSION

For the reasons discussed, Defendant's Cross-Motion For Summary Judgment will be granted, and Plaintiff's Motion For Summary Judgment will be denied.  The decision of the Commissioner dated April 22, 2003 will be affirmed.

An appropriate Order will be entered.